UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

Hiu Lui NG
A 73-558-364

Petitioner,

-against-

Michael Chertoff, Secretary,
Department of Homeland Security,
John Torres, Director,
ICE Office of Detention and Removal,
Bruce Chadbourne, Boston Field Office Director,
ICE Office of Detention and Removal Operations,
Wayne T. Salisbury Jr., Warden,
Donald W. Wyatt Detention Facility,

Respondents.

CA 08 285

Docket #

**PETITION FOR WRIT OF HABEAS CORPUS WITH EMERGENCY ORDER TO SHOW CAUSE WITHIN THREE DAYS PURSUANT TO 28 U.S.C. §2241 ET SEQ.**

1) Petitioner hereby petitions this Court under 28 U.S.C. § 2241, et seq., to issue a Writ of Habeas Corpus ordering Petitioners' release from the custody of the Department of Homeland Security, United States Immigration and Customs Enforcement ("ICE"). In the alternative, Petitioner requests that the Court order Respondents to show cause within three days pursuant to 8 U.S.C. §2243.

**GROUNDS FOR EMERGENCY ORDER TO SHOW CAUSE WITH A RETURN DATE OF THREE DAYS**

2) Petitioner requests that this Court order Respondents to immediately show cause why the relief requested in this petition should not be granted. According to 28 U.S.C. § 2243:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto. The writ, or order to show cause shall be directed to the person having custody of the person detained. It shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed.
>
> 28 U.S.C. § 2243 (emphasis added).

## JURISDICTION

3) Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 2241 (habeas corpus); 28 U.S.C. § 1331 (federal question jurisdiction); the Administrative Procedure Act, 5 U.S.C. § 701 et seq.; F.R.C.P. Rule 81 et seq., and declaratory judgment and mandamus, brought pursuant to 28 USC sec. 2201, 28 USC sec. 1361.

## VENUE

4) Venue is proper in this court, which exercises jurisdiction in petitions for habeas corpus filed by persons residing in the District of Rhode Island. Petitioner is incarcerated at Wyatt Detention Facility, Central Falls, Rhode Island.

## PARTIES

5) Petitioner is a native and citizen of the People's Republic of China. He is the beneficiary of an approved I-130 Immigrant Petition filed on his behalf by his United States Citizen wife. He is presently incarcerated at Donald W. Wyatt Detention Facility in Central Falls, Rhode Island.

6) Respondent, Michael Chertoff, is the duly appointed, qualified, confirmed and acting Secretary of Homeland Security. He is sued in his official capacity, in which he bears the responsibility of the administration and enforcement of all the functions,

powers and duties of the newly formed Bureau of Immigration and Customs Enforcement ("ICE"), including maintaining and enforcing Petitioner's custody, setting terms of parole, if any.

7) Respondent, Bruce Chadbourne, the Boston District Field Office Director in charge of Office of Detention and Removal Operations of the Bureau of Immigration and Customs Enforcement ("ICE") is sued in his official capacity, in which he bears the responsibility of the administration and enforcement of the ICE's functions relating to detention and removal of aliens, including maintaining and enforcing Petitioner's custody, setting terms of parole, if any.

8) Respondent, Wayne T. Salisbury Jr., Warden of the Wyatt Detention Facility, is the official charged with responsibility for detention of Petitioner.

## FACTUAL BACKGROUND

9) Petitioner, Hiu Lui NG ("Mr. Ng"), is a native and citizen of the People's Republic of China ("China"). He was born on August 3, 1974 in Wenzhou city, Zhejiang Province in China.

10) Mr. Ng entered the United States lawfully with his parents on February 6, 1992 on a B-2 visa. He was seventeen years old at the time. He remained in the United States past the authorized time.

11) A Notice to Appear was issued to Mr. Ng on December 11, 2000, ordering him to appear in an immigration hearing on February 2, 2001. However, since the notice was mailed to a nonexistent address, Mr. Ng did not receive notice and did not appear at the hearing.

12) Consequently, an immigration judge ordered Mr. Ng removed from the United States in Mr. Ng's absence on February 2, 2001.

13) Mr. Ng married his wife Lin Li QU on February 9, 2001. Ms. Qu was a legal permanent resident at the time.

14) Ms. Qu filed an I-130 Immigrant Petition on behalf of her husband Mr. Ng on April 20, 2001. It was around this time that Mr. Ng learned that he had been ordered removed by an Immigration Judge, because the attorney handling the I-130 petition informed him of the order.

15) Ms. Qu became a United States Citizen on June 13, 2003. On August 11, 2006, Ms. Qu re-submitted an I-130 to USCIS because over five years had passed since she filed the form and they had not contacted the couple for approval. USCIS then scheduled an interview for adjustment of status on July 19, 2007 at 26 Federal Plaza.

16) When Mr. Ng and Ms. Qu appeared for their interview on July 19, 2007, Mr. Ng was arrested and detained by DHS officers.

17) A petition for writ of habeas corpus was filed with this Court on August 6, 2007. That case was assigned the docket number 07-cv-00290. According to PACER, that case was dismissed for lack of jurisdiction. The docket report does not show that the judge issued an opinion or formally entered a judgment on the case, however.

18) After Mr. Ng was placed in detention, Mr. Ng moved the immigration court to reopen his removal proceedings and argued, among other things, that he did not receive notice for the hearing.

19) On August 27, 2007, the immigration judge denied Mr. Ng's motion to reopen. Mr. Ng timely appealed that decision to the Board of Immigration Appeals ("BIA" or "Board").

20) On October 18, 2007, the BIA dismissed Mr. Ng's appeal. Mr. Ng timely petitioned the U.S. Court of Appeals for the Second Circuit to review the BIA's decision.

21) On April 8, 2008, the Second Circuit remanded the case to the BIA. Mr. Ng's case currently is pending before the BIA.

22) On or about April 21, 2008, Mr. Ng was transferred to Franklin County Jail located in St. Albans, Vermont.

**Mr. Ng's Medial Condition**

23) Since the transfer, Mr. Ng began to suffer from skin irritation and chronic back pain. Due to the lack of medical treatment at the detention center, Mr. Ng requested to be transferred.

24) On or about July 3, 2008, Mr. Ng was transferred back to the Donald W. Wyatt detention facility in Central Falls, Rhode Island.

25) After the transfer, Mr. Ng's medical condition did not improve – he continued to have skin irritation and back pain. In fact, his back pain has become so severe that he now cannot stand up straight such that he is permanently in a hunched position. He needs to take frequent rests when he walks. As a result of his pain, he suffers from severe insomnia. Mr. Ng has never exhibited any of the conditions before he was placed in custody, and his family is very concerned about his mental stability.

26) Mr. Ng sustained a leg injury while he was in detention. This injury has not been treated. No medical diagnosis has been performed on Mr. Ng to determine the exact cause of the back pain, e.g. whether his leg injury is linked to his back pain.

27) Mr. Ng initially requested for medical treatment on or about July 7, 2008. Mr. Ng medically treated (except given some painkiller by a nurse) until about July 11, 2008, when Mr. Ng's relative wrote to the warden of the detention center.

28) On or about July 14, 2008, Mr. Ng was finally seen by a doctor and was given analgesics, muscle relaxers, and anti-inflammatory agents. Mr. Ng's condition, however, did not improve. Also, no effort was made to determine the cause of Mr. Ng's back pain, and no other diagnosis or medical treatment was given.

29) Recently, Mr. Ng's back pain has become so acute that he cannot walk without a cane. For an extended period of time, Mr. Ng was assigned the upper bunk bed, and climbing up and down the bed (at least three times a day for headcounts) caused him excruciating pain. Mr. Ng later was given a cane and was moved to a lower bunk bed. However, the back pain persists.

30) Mr. Ng was required to personally walk to a counter and wait in line to obtain his medication. Because Mr. Ng cannot stand up or walk for an extended period of time, he has not been able to obtain his medication.

31) A request was made that medication be delivered to Mr. Ng's cell; that request was denied.

32) Mr. Ng has been having difficulty to even walk to the telephone booth to call his family. For over two weeks, Mr. Ng has had to rely on other Chinese detainees at the detention center to call home on his behalf.

33) Mr. Ng's condition has worsened to such a point where he is having problem using the bathroom, which is located within his cell, only feet away from his bed.

34) On July 26, 2008, Petitioner's counsel, Andy Wong, traveled to the detention facility to talk to Mr. Ng. Mr. Ng, however, could not even walk from his cell to the visitation area. He therefore requested a wheelchair. He was denied a wheelchair or any other assistance.

35) According to a correctional officer, Mr. Ng was medically cleared to walk and was given a cane. The facility insisted that Mr. Ng walk to the visitation area.

36) The attorney requested that he be permitted to go to Mr. Ng's cell to talk to him; that request was denied.

37) The attorney requested to talk to Mr. Ng on the phone, using a telephone booth closer to Mr. Ng's cell; that request was denied.

38) The attorney requested that some documents be delivered to Mr. Ng for his signature; that request was denied.

39) Since Mr. Ng could not walk to the visitation area, the meeting had to be called off. The attorney was unable to see or talk to Mr. Ng.

40) According to the record, the ICE issued a decision to continue detention dated February 6, 2008. Since then, Mr. Ng was not given another custody review.

## LEGAL GROUNDS FOR RELIEF

### Denial of Medical Treatment

41) Detention under civil immigration laws is not meant to be a punishment. *Wong Wing v. United States*, 163 U.S. 228, 235 (1896). For a civil detention provision to survive constitutional scrutiny, it must be for a legitimate regulatory purpose and be

narrowly tailored so as not to be excessive in relation to its purpose. *Salerno*, 481 U.S. at 746. However, "the mere invocation of a legitimate purpose will not justify particular restrictions and conditions of confinement amounting to punishment." *Schall v. Martin*, 467 U.S. 253, 269 (1984) (pretrial detention of juveniles). Even if the detention serves a purpose, "it is still necessary to determine whether the terms and conditions of confinement...are in fact compatible with those purposes" *Id; see also Addington v. Texas*, 441 U.S. 418, 425 (1979) ( "[C]ivil commitment *for any purpose* constitutes a significant deprivation of liberty that require due process protection.") (emphasis added).

42) The *Schall* and *Salerno* standard has been repeatedly adopted in the immigration context. *See Patel v. Zemski*, 275 F.3d 299, 307-11 (3d. Cir. 2001) (adopting the *Salerno* "heightened due process scrutiny to determine if [a] statute's [authorization of detention]... is narrowly tailored to serve a compelling state interest."); *Gisbert v. INS*, 988 F.2d 1437, 1442, *as. amended*, 997 F.2d 1122 (5th Cir. 1993) (determining that whether incarceration of immigrants constitutes impermissible punishment "turn[s] on 'whether an alternative purpose to which [the detention] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.'") (*citing Schall* and *quoting Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963).

43) Although immigration detention is under the purview of the Due Process Clause, the minimum standard allowed by the Due Process Clause is the same as that allowed by the Eighth Amendment. *See Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

44) The Eighth Amendment prohibits the unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). In the context of medical care, acts or omissions sufficiently harmful to evidence deliberate indifference to serious

medical needs constitute a violation of a person's the Eighth Amendment rights. *Estelle*, 429 U.S. at 106.

45) Here, even though the detention facility has been placed on notice of Mr. Ng's medical conditions, no adequate diagnosis has been performed to determine the exact cause of his back pain.

46) Medication prescribed for Mr. Ng does not alleviate his symptoms, and no adequate treatment has been given to determine or cure the cause of his condition.

47) For an extended period of time, and despite the detention facility's knowledge of Mr. Ng's medical condition, Mr. Ng was assigned to the upper bunk bed and was required to climb down from his bunk bed at least three times a day for headcounts.

48) The detention facility's indifference to Mr. Ng's medical condition has caused his back pain to worsen to a point that he cannot stand up straight or walk without a cane.

49) In addition, Mr. Ng is required to line up at a counter to pick up his medication everyday. Due to his worsening condition, Mr. Ng cannot stand up for an extended period of time. Although Mr. Ng requested a wheelchair, he was not given one.

50) He also requested that the medication be delivered to his cell; that request was denied.

51) Consequently, Mr. Ng has been bed-bound and has not been able to obtain his medication.

52) The facility's denial of wheelchair assistance and delivery of medication constitutes a denial of medical treatment.

53) Not only is the deliberate withholding of adequate medical treatment a violation of the Eighth Amendment standard, it also does not serve the purpose of immigration

detention, which is "[e]nsuring the appearance of aliens at future immigration proceedings" and "preventing danger to community." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

**Denial of Assistance of Counsel: Attorney Not Allowed to See Petitioner on July 26, 2008**

54) "The Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Zadvydas v. Davis*, 533 U.S. 678, 692-93 (2001); *Montilla v. INS*, 926 F.2d 162, 169 (2d Cir. 1991). The constitutional right to counsel in an immigration case is based upon the Fifth Amendment's guarantee of due process of law. *Saakian v. INS*, 252 F.3d 21 (1st Cir. 2001); *Uspango v. Ashcroft*, 289 F.3d 226, 231 (3d Cir. 2002).

55) Mr. Ng is denied the right to the assistance of counsel.

56) On July 26, 2008, Petitioner's counsel, Andy Wong, traveled to the detention facility to talk to Mr. Ng. Mr. Ng, however, could not even walk from his cell to the visitation area. He therefore requested a wheelchair. He was denied a wheelchair or any other assistance.

57) According to a correctional officer, Mr. Ng was medically cleared to walk and was given a cane. The facility insisted that Mr. Ng walk to the visitation area.

58) The attorney requested that he be permitted to go to Mr. Ng's cell to talk to him; that request was denied.

59) The attorney requested to talk to Mr. Ng on the phone, using a telephone booth closer to Mr. Ng's cell; that request was denied.

60) The attorney requested that some documents be delivered to Mr. Ng for his signature; that request was denied.

Since Mr. Ng could not walk to the visitation area, the meeting had to be called off. The attorney was unable to see or talk to Mr. Ng.

**<u>Detention Beyond Removal Period is Unconstitutional</u>**

61) The removal order against Mr. Ng was a final order as of February 2, 2001 when the immigration judge ordered him removed *in absentia*.

62) According to INA § 241, "when an alien is ordered removed, the Attorney General ***shall remove*** the alien from the United States ***within a period of 90 days***.... During the removal period, the Attorney General shall detain the alien." INA § 241(a)(2), 8 U.S.C. § 1231(a)(2) (emphasis added).

63) In *Zadvydas v. Davis,* 533 U.S. 678 (2001), the Supreme Court determined that detention beyond six-months after the final order of removal is presumptively unreasonable, and the alien must be released unless the government can demonstrate that removal is reasonably foreseeable, or there are special circumstances justifying continued detention such as especially dangerous individuals. *Zadvydas*, 533 U.S. at 690; *see also* Memo of Attorney General John Ashcroft, 66 Fed. Reg. 38433 (2001) ("the Supreme Court indicated that there may be cases involving 'special circumstances,' such as terrorists or other especially dangerous individuals, in which continued detention may be appropriate even if removal is unlikely in the reasonably foreseeable future.").

64) *Zadvydas* is applicable to the case at bar as Petitioner is being detained beyond the removal period. *See also Clark v. Martinez*, 543 U.S. 371 (2006).

65) The six-month reasonable period under *Zadvydus* to effect removal expired on August 1, 2001. Thus, detention beyond that date is presumptively unlawful.

66) Even assuming that the removal period began on the date of detention, Mr. Ng's

detention is unlawful. Mr. Ng has been in detention since July 2007. Although he has been detained for over a year, he still is not removed. Therefore, the continued detention of Mr. Ng beyond the removal period is unconstitutional.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

67) Mr. Ng repeatedly made requests for adequate medical treatment. His requests, however, have not been made. There is no other available administrative remedy.

## **RIGHT TO ATTORNEY FEES AND COSTS**

68) Petitioner is entitled to costs and attorney's fees associated with this action. Congress has authorized fee recovery by prevailing parties in the Equal Access to Justice Act. Under EAJA, the prevailing litigant is entitled to attorney's fees and costs if the government fails to show that its position was substantially justified or that special circumstances make an award unjust and (3) the requested fees and costs are reasonable. *Perez-Arellano v. Smith,* 279 F.3d 791, 793 (9th Cir. 2002) (citing 28 U.S.C. § d)(1)(A)). As there is no lawful basis for detention, and the government action in this matter has been unwarranted and egregious, the government's position is not substantially justified, and thus, attorney's fees are appropriate.

//

//

//

WHEREFORE, YOUR PETITIONER PRAYS THIS HONORABLE COURT TO:

I Declare Respondents' deliberate indifference of Petitioner's medical condition without a tenable justification a violation of the Due Process Clause of the Constitution;

II. Order Respondents to immediately provide Petitioner with adequate medical treatment and diagnosis by a qualified medical professional;

III. Order Respondents to immediately make accommodation for Petitioner's medical condition;

IV. Declare that continued detention of Petitioner is unlawful and unconstitutional;

V. Order Respondents to immediately release Petitioner;

VI. Grant interim release pending a final decision, and any appeal of such decision, on this writ;

VII. Alternatively order Respondents to show cause why Petitioner is not being given adequate medical treatment;

VIII. Award Petitioner costs and attorneys fees; and

IX. Grant any other and further relief may be fit and proper.

Dated: July 29, 2008

RO for J Basdavid

Joshua Basdavid
401 Broadway #22h
New York, NY
(212) 219-3244

Randy Olen, Esq.
55 Bradford Street, Suite 203
Providence, RI 20903
(401) 274-1400
(401) 274-2480 (fax)

**CERTIFICATION**

I hereby certify that on this 29th day of July, 2008 a sent a true copy of the within ***Petition*** via first class mail to Michael Chertoff, Secretary, Department of Homeland Security, Washington, DC 20528; John Torres, Director, ICE Office of Detention and Removal, Department of Homeland Security, Washington, DC 20528; Bruce Chadbourne, Boston Field Office Director, ICE Office of Detention and Removal, 10 New England Executive Park, Burlington, MA 01803; Wayne T. Salisbury Jr., Warden, Donald W. Wyatt Detention Facility, 950 High Street, Central Falls, RI 02863; Dulce Donovan, Assistant U.S. Attorney, Civil Division, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903; and Dept. of Homeland Security, District Counsel, J.F.K. Federal Building, Rm. 425, Government Center, Boston, MA 02203.